## 18491

PIONEER MANUFACTURING CO., INC., Appellant, v.
COLUMBIA EQUIPMENT RENTALS, INC., Respondent

(148 S. E. (2d) 48)

*J. Wesley Drawdy, Esq.*, of Columbia, *for Appellant,*

*Messrs. Turner, Padget, Graham & Laney,* of Columbia, *for Respondent,*

April 15, 1966.

BUSSEY, Justice.

Plaintiff-appellant seeks in this action to recover damages which it alleges resulted from the defendant-respondent having rented to plaintiff a defective truck after impliedly warranting said truck to be fit and proper for the use to be made thereof by the plaintiff. Following an adverse jury verdict, the plaintiff appeals from the refusal by the trial court of its motion for a directed verdict, as well as its motion for judgment *non obstante veredicto*.

Plaintiff is in the textile business and has a plant at Camden, and the defendant, as its name implies, is in the equipment rental business at Columbia. From time to time, defendant rented to plaintiff and/or its affiliates, various

motor vehicles. On October 5, 1961, the defendant rented to an affiliate of plaintiff a six ton truck which was returned to the defendant on October 26, having been driven in that period of time 4,500 miles. At about 3 o'clock on the afternoon of October 24th, the truck left Camden, en route to Alabama, with a load of textile goods. During the early morning of October 25th, after the truck had been driven nearly all of the way across the State of Georgia, over rough roads in that state, the driver of the truck discovered that the rear door thereof had come open and that a substantial amount of his cargo had been lost along the highway.

The truck had a single, roll-up rear door equipped with a bar latch. This bar was affixed perpendicularly to the door on the exterior, near the bottom. The top thereof was bent at a right angle to form a handle so constructed, with a slot therein, that when the latch was closed the handle could be locked to the door of the truck with a padlock. The bottom of this bar latch was also bent at a right angle and fitted into a slot in the floor of the truck and, when in a closed position, the lower end of the latch bar went underneath a metal plate affixed to the floor of the truck. The dimensions of neither the bar latch nor the plate on the floor of the truck appear in the evidence. In order to form the slot for the bottom of the bar latch to work in, the plate was constructed in a U shape. The said plate was held to the floor of the truck by screws, and the evidence is conflicting as to whether said plate was, or was not, welded to a steel cross beam, which extended across the truck in the vicinity of the latch plate.

The driver of the truck testified that he had securely closed the latch and padlocked the same before leaving Camden. After discovering the door had come open, he found that the latch plate on the floor of the truck had become cracked or broken, with the result that the portion thereof which immediately held the bottom end of the bar latch had sufficiently pulled away from the floor to enable the latch to escape. Two screws, which held the portion of the plate which broke away,

were pulled partly out of the wooden floor but the remaining screws were still intact. There is no evidence as to the condition of the floor of the truck or as to the size of the screws which pulled partly out of the floor, evidently after the plate broke.

That the latch plate broke and was later repaired by the defendant is not disputed. There is, however, a paucity of evidence as to what caused the breakage. The evidence discloses neither the dimensions of the latch plate nor the material out of which it was constructed, other than it was metal of some kind. Just where or by whom the truck was driven some four thousand miles after it was leased and before the latch plate broke does not appear. The driver of the truck at the time of the break, Mr. Shoemaker, testified that he had driven the particular truck one or two times before that occasion, but did not specify when or where. He testified that on the particular trip he had driven almost all of the way across the State of Georgia, over rough roads, at a speed of 50 to 55 miles per hour, but did not otherwise give his itinerary. The only evidence even tending to show that the break was caused by any defect, or insufficiency, in the plate itself, or to any fault of the defendant, is contained in the following question and answer.

"Q. Mr. Shoemaker, did you attempt to determine whether the plates on that latch had been broke?

"A. As far as I could determine it hadn't been welded or anything like that. It just looked like they had worn in two."

The witness did not elaborate further. He testified that he didn't notice anything wrong with the plate or the screws prior to the event complained of. He was asked on cross-examination if he had ever pulled the door down with the latch in a closed position so as to strike the latch plate on the top, and he admitted that he might have done so, but stated that he did not remember doing so. The latch plate, and consequently any patent defect therein, was in plain view of anyone opening or closing the door to the truck.

This action is predicated upon the contention that when the defendant rented the truck, an obligation or warranty, similar to the implied warranty of fitness in the sale of personal property was imposed, as a matter of law, upon the defendant. While we have, of course, had occasion to apply the rule of implied warranty with respect to the sale of chattels, plaintiff concedes that we have not heretofore had opportunity to consider the application of that rule to a bailment transaction such as the instant one. Plaintiff cites, among other authorities, 8 C. J. S., Bailments, § 25a, p. 380, and 8 Am. Jur. (2d) 1039, Bailments, Section 143. Courts of other jurisdictions have considered the legal question presented and, with certain limitations and exceptions, as a general rule hold that an implied warranty of soundness or fitness is implied by law on the bailor of leased chattels. Assuming the soundness, within certain limitations, of the general rule of law relied upon by plaintiff, we are still cited to no authority which supports the ultimate contention of the plaintiff that it was entitled to judgment, as a matter of law, on the evidence disclosed by the record.

As we view the instant record, we deem it unnecessary to fully consider the general rule relied upon by plaintiff, or to enter into any discussion of the various limitations upon, or exceptions to, that general rule. It is extremely doubtful whether plaintiff's single exception is sufficiently in compliance with Rule 4, Section 6 to warrant consideration by this court. Waiving that, however, and granting the soundness of the general rule relied upon by plaintiff, the most that could be said of the evidence here is that a jury issue was presented as to whether the damages sustained by the plaintiff were proximately caused by any breach of such implied warranty on the part of the defendant. Such being the case, there was, of course, no error on the part of the trial court in refusing plaintiff's motions.

Affirmed.

Moss, Acting C. J., LEWIS and BRAILSFORD, JJ., and LEGGE, Acting Associate Justice, concur.